## McCOMB v. STEINBERG et al.
### Civ. A. No. 132–O.

District Court, M. D. Alabama, E. D.

May 15, 1947.

256

William S. Tyson, Sol., of Washington, D. C., Lemuel H. Davis, Regional Attorney, and Robert M. Taylor, both of Birmingham, Ala., for the Department of Labor.

Harry D. Raymon, of Tuskegee, Ala., for defendants.

KENNAMER, District Judge.

The plaintiff's complaint and the defendant's answer having been filed in this cause, and plaintiff and defendants having appeared by counsel and the court having proceeded to hear this cause, and all the legal evidence having been considered by the court, the court makes the following:

Findings of Fact

1. The plaintiff, William R. McComb, is Administrator of the Wage and Hour Division, United States Department of Labor,

2. The defendants, Max Steinberg, Aaron Steinberg, and Nathan Steinberg reside in Macon County, Alabama.

3. The defendants are now, and at all times hereinafter referred to were, engaged in the wholesale grocery business at Tuskegee, Macon County, Alabama, as partners doing business as Tuskegee Wholesale Grocery Company.

4. The defendants have engaged in selling and distributing goods entirely within the State of Alabama and have not sold or shipped any goods to points outside the State of Alabama.

5. The present location of defendants' place of business is at the intersection of Montgomery Street and North Main Street in Tuskegee, Alabama. The defendants' business has been at the present location since February, 1947. The prior location of defendants' place of business was on South Main Street in the business district of Tuskegee, Alabama.

6. Since November 1, 1944, the greater part of the goods sold by defendants have been and are purchased, from dealers and manufacturers located outside the State of Alabama, and are shipped and delivered to defendants from points outside the State of Alabama. The defendants regularly and recurrently purchase goods in substantial quantities each week from without the State of Alabama, and substantial quantities of goods are shipped to defendants each week from points without the State of Alabama and are regularly and recurrently received by defendants each week.

7. The defendants' truck driver and truck helper regularly and recurrently each week make from three to five trips per week from defendants' place of business to the depot of the Tuskegee Railway Company to pick up substantial quantities of goods shipped in less than carload lots to defendants from points outside the State of Alabama and the defendants' truck driver and truck helper load said goods shipped to defendant in less than carload lots from points outside the State of Alabama onto defendants' truck at the railway depot and transport said goods to defendants' warehouse at Montgomery Street and North Main Street, Tuskegee, Alabama, and unload said goods into the defendants' warehouse. The defendants' truck driver and truck helper have spent at least three hours regularly and recurrently every week in such activities in picking up, transporting, and unloading into defendant's warehouse goods shipped to defendants from points outside the State of Alabama.

8. When the defendants' place of business was located at the prior location on South Main Street, in the business district of Tuskegee, defendants' truck driver and truck helper engaged in substantially the same activities in picking up less than car-

load lot shipments from outside the State of Alabama as they have done since the business was moved to the present location.

9. There is a spur track from the railroad of the Tuskegee Railway Company to the warehouse of the defendants and the defendants frequently and repeatedly have received shipments in carload lots from points outside the State of Alabama on this spur track and these goods shipped to defendants in carload lots are unloaded by defendants' employees into defendants' warehouse. Shipments in carload lots are received during most weeks but are not received every week. Some weeks more than one carload shipment is received. Since defendants' warehouse has been located at its present location, defendants have averaged receiving one carload shipment each week. Some of the unloading has been done by defendants' truck driver and truck helper, some of the unloading has been done by the defendants' warehouseman, and some of the unloading from the cars on the spur track has been done by extra or occasional employees hired by the defendants for the specific purpose of unloading the cars.

10. Defendants' bookkeeper checks all invoices of shipments to defendants from points outside the State of Alabama and posts them on the accounts payable ledger and keeps records of all shipments from points outside the State of Alabama. The defendants' bookkeeper writes the checks in payment for all goods purchased from points outside the State of Alabama and keeps the payroll records for all of defendants' employees. Defendants' bookkeeper regularly and recurrently spends about 10 to 15 hours a week working on such activities.

11. During the time that defendants' place of business was located at the prior location, carload shipments received at Tuskegee by rail were transported by common carriers from the depot of the Tuskegee Railway Company at Tuskegee and unloaded on the sidewalk in front of defendants' place of business and some of defendants' employees except the office employees spent a substantial amount of time in transporting said goods from the sidewalk in front of defendants' place of business into defendants' warehouse and in checking in such goods and other activities in connection with receiving these goods.

12. The court judicially notices the record-keeping regulations promulgated by the Administrator of the Wage and Hour Division pursuant to Section 11(c) of the Fair Labor Standards Act of 1938, 29 U.S. C.A. § 211(c), which are Title 29, Chapter V, Part 516, of the Code of Federal Regulations.

13. Repeatedly from November 1, 1944, to the time of the entry of a preliminary injunction on March 25, 1947, the defendants employed some of their employees who were engaged in transporting, receiving, and unloading goods in interstate commerce, or engaged in paying for goods received in interstate commerce and keeping records of goods received in interstate commerce in excess of 40 hours per week without paying them one and one-half times their regular rate of pay for such excess hours.

14. Defendants have continuously, since November 1, 1944, until the time of the entry of the preliminary injunction on March 25, 1947, failed to keep records in form and manner as required by the regulation, referred to in paragraph 12 hereof.

### Conclusions of Law

1. The defendants' truck driver, truck helper, bookkeeper, warehouseman, and all other employees of defendants who have been engaged in ordering, receiving, unloading, or transporting goods in interstate commerce since November 1, 1944, during their respective periods of employment, have been engaged in interstate commerce within the meaning of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

2. Employees of defendants who are engaged exclusively during any workweek in the local distribution of goods within the State of Alabama after such goods have come to rest in defendants' warehouse are not engaged in interstate commerce within the meaning of the Fair Labor Standards Act of 1938 during such workweeks.

3. The defendants have repeatedly violated Sections 7, 11, and 15 of the Fair Labor Standards Act from November 1, 1944

until the entry of the preliminary injunction on March 25, 1947.

4. Under Section 17 of the Fair Labor Standards Act of 1938, a permanent injunction should issue to prohibit further violations of Sections 15(a)(2) and 15(a)(5) thereof.

## Order

Wherefore, for cause shown, it is

Ordered, adjudged and decreed that defendants, their agents, servants, employees, attorneys and all persons acting or claiming to act in their behalf and interest, be, and they hereby are, permanently restrained and enjoined, from violating the provisions of Sections 15(a)(2) and 15(a)(5) of the Fair Labor Standards Act of 1938, in any of the following manners:

1. The defendants shall not, contrary to Sections 7 and 15(a)(2) of the Act, employ any of their employees engaged in commerce, as defined by the Act, for a workweek longer than 40 hours, unless the employee receives compensation for his employment in excess of 40 hours during such workweeks at a rate not less than one and one-half times the regular rate at which he is employed.

2. The defendants shall not, contrary to Sections 11(c) and 15(a)(5) of the Act, fail to make, keep and preserve adequate and accurate records of their employees, and of the wages, hours and other conditions and practices of employment maintained by them, as prescribed by the regulations of the Administrator issued, and from time to time amended, pursuant to Section 11(c) of the Act, and found in Title 29, Chapter V, Code of Federal Regulations, Part 516.

3. Nothing in this order shall be construed to mean that any employee of the defendants is subject to or entitled to any benefits under the Fair Labor Standards Act of 1938 during any workweek in which such employee is engaged exclusively in the local distribution of goods within the State of Alabama after such goods have come to rest in defendants' warehouse.

It is further ordered, adjudged, and decreed that all costs and disbursements in this case be, and they hereby are, taxed against the defendants for which let execution issue.